Good afternoon, your honors. Todd Burns on behalf of Ms. Gagnon. My hope is to reserve about two minutes for rebuttal. I want to begin with the due process indigency claim raised in the briefs. And while I know the court is familiar with the facts, I think it's useful to emphasize a few of the facts with respect to the origins of this case. Ms. Gagnon was educated at RGM order-run schools. As an adult, she maintained a close relationship with RGM nuns and a close relationship with the Catholic Church. She was very involved in the Catholic Church in positive ways. In November of 2008, she was... Doesn't that hurt you on the abuse of trust issue, to the extent you emphasize all of these relationships? I don't believe it does, but I would like to focus more on the issues that undo the convictions rather than the sentencing issues, which would render the sentencing issues irrelevant. November 2008, Ms. Gagnon traveled to visit a friend of hers who was an RGM sister and was living in a convent in Rhode Island. Counsel, I don't care. I don't understand where you're going. Where are you going? What's your argument? What's the point? Well, where I'm going with this is that the government charged in the indictment and what they've alleged in their brief and what they argued throughout their case is that at the outset in that November 2008 meeting, visit, Ms. Gagnon set out to defraud the RGM sisters. And when you look at the circumstances at the outset there, that seems an implausible reading of those circumstances. Does the government have to prove that she intended from the outset to defraud them in order to convict her of fraud? That's what they charged in the indictment, and that's what their case was. And at the outset here, and their first two of their three counts were November and early December of 2008. So they rely on the fact that she set out to scam them in November of 2008. That's how the case is set up. That's how it was charged. And given that two of the three charges are early on in these events, it really relies on that. Did your side make this argument to the jury? Make the argument about her cognitive... The one you're making now. About the cognitive difficulties? No. You just made an argument that there was no intent to deceive or defraud at the outset. Is that one of your defenses that you argued to the jury in this case? Well, I believe that the defense generally was that she didn't have... Is that one? Answer my question. Yes. Was that argument made to the jury? Yes. Where is that in the excerpt? I believe the enclosing was based on the fact that she didn't intend to deceive. The defense was completely about whether or not she had the intent to deceive. It wasn't that some of these events that she didn't take the money... From the outset? Did you make that distinction? Well, again, I wasn't trial counsel, but I would... So you don't know what the defense was? No. My recollection of the record is she never intended to deceive and that she got... Because her business was in disarray, she got behind on her business accounts. She spent this money. She scrambled to try to complete the deal in the spring of 2009, and she couldn't make it happen. So it wasn't the facts that were disputed. The core facts... Counsel, help us zero in on what the precise assignment of error is that you're making. Are you challenging the... I don't understand. Are you challenging the use of the model instruction 3.16 on intent? Is that where we're going on this? No. What I'm trying to... I see two issues here. The jury instruction issue and the failure to order CJA funding for the witness. Is there a third issue? No. It's the first... It's that second issue that Your Honor mentioned that I'm trying to focus on here. And my point in going through... The CJA... Which issue is it you're trying to focus on? The CJA funding, the indigency, and not being able to present a defense. That wasn't even requested in the district court. How in the world is this plain error? It doesn't seem to even be error at all. Well, the argument that's set out in the brief is that it's plain error because the district court was specifically told that this key witness was not being called because Ms. Gagnon couldn't afford to pay him. And the district court... Where is there any authority at all for the proposition that under these circumstances, a judge has a sua sponte requirement to jump in? Well, the best authority that I've found... Take over where the counsel... Take over where counsel didn't. The best authority that I've found for that that I've cited is the Supreme Court's case in Glasser and this court's case in Allen, which says in a fundamental constitutional right, the violation of a fundamental constitutional right... What's the fundamental constitutional right? To present a defense. Well, she had counsel. The counsel didn't request funding. You're talking about the funding for Dr. Sporty, right? Yes. Okay. Did counsel ever ask the district court to provide funds for Dr. Sporty? No. Okay. So why isn't the district court entitled to think, well, maybe I would have called Dr. Sporty, maybe I wouldn't have, but this clearly is a strategic call by counsel. Well, what the district court said is, I understand money is an issue, money is an issue. Counsel repeatedly said, I'm not calling this witness because she can't pay the witness. Well, how do we know that? Is there anything in the record that shows what this doctor would have testified to that would have been helpful to this witness? Well, his report and the report of Dr. Franklin. That's in the record? Yes. Where is it in the record? ER what? Dr. Sporty is at ER 59 to 66, and Dr. Franklin is at 67 to 81. Now, those reports were attached to the sentencing memorandum, but the government had provided those reports more than a year before trial. So the point is the district court is told this is the reason the witness is not being called and indicates its understanding. He says, I understand money is an issue, money is an issue. At that point, under Glasser and Allen, the district court has a duty to intervene. Now, I'm not saying that defense counsel is. Counsel, did the district court know what Dr. Sporty was going to say? Yes, he had asked for a profit. Okay. But you know something? We have counsel all the time who would, who if they had unlimited funds, would bring in all kinds of witnesses to testify on their behalf. If she had unlimited funds, she might have hired a half a dozen Dr. Sportys. But this isn't a matter of unlimited funds. It's a matter of she'd actually, Dr. Sporty had already been paid for all of his background work. But you're here on plain error. If it didn't occur to counsel to ask for the money, why does it have to occur and it is error for a district court to fail to volunteer it? Well, I think the closest parallel is the Baer case, in which counsel didn't ask for a public authority defense, but nevertheless because it was so obvious that that was the defense, the district court was obligated, sua sponte, to give a public authority instruction. Those are, that goes to jury instructions. This is providing money to hire witnesses. Well, I guess I don't know. I can only, in the end, I can only come at it from my perspective. When I first met Ms. Gagnon post-trial and she told me this happened and that her key witness was not presented because she could not pay him, I was shocked. It would seem to me that when that is brought home to the district court, Isn't your argument, isn't your best argument ineffective assistance of counsel and not plain error on the part of the district court? Well, and I'll bring an ineffective assistance of counsel if I need to, claim if I need to. The problem is, is that meanwhile, Ms. Gagnon is sitting in custody and I move for bail pending appeal and I move for bail pending a 2255. She got a 37-month sentence. And meanwhile, she's going to do all that time before I get to the 2255. And I don't think the district court is blameless here. I think when the district court is told by defense counsel, I'm not calling this witness because I can't pay, the district court at some point, as an arbiter of fairness and to protect the constitutional rights of the accused, has to step in. And Glasser makes that clear and Allen makes that clear. And I don't think it's too much to ask that at a certain point the district court has to do something. That's a new test. Too much to ask. Are you relying on 3006AE1 of the 18 U.S.C.? The Criminal Justice Act. Yes, I am. That starts out words. Upon request. Again, I'm not saying that defense counsel shouldn't have made the request, but I'm saying that there comes a certain point that rather than the district court saying I understand money is an issue and washing his hands of the situation, the district court should intervene and do something. The district court is not just sitting there watching things happen without any responsibility. When a defendant's fundamental constitutional right to present a defense is being denied because she can't pay the last little bit necessary to call her psychiatrist, the district court should inquire and say, look, what's going on here? You can apply for CJA funds. What was the proffer to Judge Guilford? The proffer was that she had suffered from cognitive dementia. Did you provide the letter? I have the letter from Dr. Sporty to Mr. Corey. It's May 7, 2012. Did you provide that letter to? That was attached to the motion in limine, which effectively satisfied the Rule 12.2 notice that was filed, I think, in September of 2008. Yes, the initial report from Dr. Sporty was attached to a filing. There were a few oral proffers that were made throughout this process as defense counsel wavered between I'm going to call and not going to call Dr. Sporty. So there was no indication that the reason for not calling Dr. Sporty was anything other than because Ms. Gagnon could not pay. Is your best case the United States v. Bayer? No, I think the best issue. On the issue of the sua sponte obligation of the judge, notwithstanding any request to order CJA funds to be expended for a witness? No, I think the best case is probably the Supreme Court's case of Glasser and this Court's case of Allen, which the context is a little different there. It's that there's an obvious conflict of counsel issue that's brought home. I believe those are the words in Glasser. When this fundamental fairness due process issue is brought home to the district court, the district court has a duty at that point to inquire. Here, the obvious inquiry would have been, well, hold on a second, counsel. Do you realize that you can apply for CJA funds here? This person's indigency should not prevent her from presenting her defense. Instead, the district court said, I understand. Money is an issue. I mean, it seems fairly glaring to me that a federal district court judge at that point has to do something rather than let that go on. Now, again, I'm not saying that defense counsel is blameless. I think he serves plenty of blame here. But, you know, meanwhile, Ms. Gagnon sits in custody, and by the time a 2255 is filed, it all becomes relatively meaningless, at least as far as the three years of sitting in custody. The second issue I'd like to address briefly, seeing as I have very little time left, is a jury instruction issue. The thrust of that issue was that there were three errors that combined basically told the jury that they could convict if they found that Ms. Gagnon lied or concealed or admitted, failed to disclose facts. Didn't you provide the instructions to the trial judge? The government did, and defense counsel signed off on those. Stipulated, did it not? Yes. So it's not just plain error, but this is now invited error. Well, under this Court's en banc opinion in Perez, in this context, defense counsel has to have known that the instructions were erroneous and accepted them for some strategic reason. There's no indication that that's what occurred here. I mean, in the Perez case, defense counsel themselves submitted the erroneous instructions. Once again, we have a situation where it was not obvious to counsel, but you want us to reverse because it should have been obvious to the judge. Well, again, it's plain error. Yes. I can't. I'm certainly not here to defend defense counsel's performance in this case. If you look at some of the other things we did. And didn't the instructions that were provided, the Ninth Circuit's model jury instructions? They were. And so the district court was supposed to know that the Ninth Circuit model jury instructions were plainly wrong, and it's plain error for him to have failed to decide to give something different? Well, the first of those errors is evident, readily apparent from the McNally case, that 1343 does not set out two offenses. It doesn't set out a separate statement. Have we corrected those instructions today? I believe that they're still mistaken in the model instructions. So it seems to me to be a good reason to deal with this and point it out rather than It might go to the question as to whether it was plain. Well, it's plain based on case law, and that's what the Supreme Court, Johnson, McNally's been around for a long time. Well, someone ought to get around to fixing the instructions, then, I think. Unless there are any other questions, I'll reserve the question. You may do so, counsel. We'll hear from the governor. Your Honor, it's good afternoon. Rob Keenan for the United States. I wanted to start with the due process claim as well. In answer to one of the court's questions, whether the report, the June 2012 report, is in the record, it was not in the record, and I don't believe it was presented to the district judge. I found no evidence of it during my review of the record during the trial. The single-page May 2012 report was filed or attached to the motion in limine that the defense counsel just mentioned. That's at page 20 of the excerpts of record, the defendant's excerpts. Excuse me, counsel. Is that the one where the doctor says she initially presented saying that raising the money to pay me and to make restitution for alleged misappropriation funds would be no problem and would be easily accomplished? Is that the report you're talking about? That is the same very one, and it was before. And so that's what was in front of the judge, that she said she had plenty of money to pay for all of this? Well, I wanted to note in reference to that motion in limine, it was filed a year before trial and then withdrawn as part of a stipulation to continue the hearing. It was never re-noticed. There was an admission to that effect during the trial. The judge wanted to know where is this motion in limine. And the defense counsel at trial said it had been withdrawn, and he probably should have re-noticed it but didn't. So it's not clear that the district judge was familiar with that one-page letter. And the report itself doesn't show up until sentencing, is that right, too? That's correct. That's my understanding of the record, having scoured it yet again. At the time of sentencing, the May 2012 report was submitted to the court, as well as the later report of Dr. Sporty, which was dated June 2012, and actually is more in the nature of a typical expert report rather than the single-page letter. And attached to that letter was the unsigned report of Dr. Franklin. So those were submitted to the district court judge at the time of sentencing, not during trial. There were, however, fairly lengthy discussions during the course of the trial, where my co-counsel objected to any admission of Dr. Sporty's testimony on doubted grounds. And there was an extensive discussion during, I believe, the pretrial conference one week before, as well as a couple of days during trial, I think on days one and two. On day three, that's the day that the defense attorney finally came in and said, we're not going to call Dr. Sporty after all. And I think, so in reference to the due process issue, the defense in this case really is asking for, I think, a significant expansion and an unwise expansion of the Ake case. The record in this case didn't present Judge Guilford with any facts warranting any sua sponte intervention in the strategic trial choices of Ms. Gagnon's attorneys. There were several objections that the government made, I believe, at the pretrial conference and repeated during the course of the trial. Late notice. We got late notice of this mental defense. In the reply brief, the defense argues, well, you know, they got notice a year before, when they filed that motion in limine. But they withdrew that motion and then didn't re-notice it and didn't give us notice. In the reply brief, the defense counsel argues that, you know, they did receive some, we, the government, did receive some discovery. It is true that we received the June 2012 report of Dr. Sporty. The problem that we highlighted during the trial proceedings and at the pretrial conference was we didn't have any discovery to back it up. You know, there was an MRI allegedly done. We have a right, the government has a right, to examine the data upon which these expert opinions of doctors are based. And there was no discovery of that nature ever provided. So it wasn't that we received no discovery. We got the reports. We didn't get the backup. That's the point I wanted to stress, which is glossed over, I think, in the reply brief of the defense. And then as to the Daubert objections, the report itself of Dr. Sporty demonstrates its incompetence. It's ill-founded and inadmissible because, well, there are several problems. Number one, the timing. He was not a treating physician. He was a defense expert obtained to evaluate her for purposes of a defense at trial. So all of the testing that he conducted and Dr. Franklin conducted occurred three years after the offense conduct. And so it wasn't clear that it was a significant factor, to use this court's language, a significant factor to the defense at trial. The testing was also incomplete. We know that because Dr. Sporty and Dr. Franklin both said that in their reports. In addition, let's see, there were other obvious deficiencies. In Dr. Sporty's report, he notes that Ms. Gagnon failed to show up for a number of the appointments with him. She failed to respond to his requests for medical documents from her own treating physicians. So he couldn't essentially conduct a full medical history and evaluate that in light of the MRI results and testing that was done. Also, his own report, Dr. Sporty's report, admits Ms. Gagnon had no history, from what he was able to determine, of dementia at all. Second, he said, quote, there were no signs of dementia. Notwithstanding his opinion that she had dementia, of an unknown etiology, to quote his report, he admits there was no signs of it, no obvious signs of dementia. So, I mean, the report is really deficient and well below what we typically see in cases where a defense lawyer is serious about presenting this offense. And I wanted to get to that in one moment. Dr. Franklin also said he was unable to complete a history for Ms. Gagnon. And there were also some other important factors that the district judge was looking at. He was looking at a defendant sitting in court entirely competent. There had been no motions by the defense counsel to declare her incompetent to stand trial. So we had this situation where Dr. Sporty, in his opinion, he never showed up in court, but in his letter, oh, you know, she's incompetent. And then there's no effort by the defense to even obtain a competency examination as to whether or not she can stand for trial. And then lastly, just in terms of the gross disconnect between Dr. Sporty's opinion and the facts, the district court had the opportunity to listen to testimony from several people, including long-term friends of the defendant. Father DeTore, who said, you know, he's known her for 20 years and would rely on her to handle money for him. Dr. Robillard, who said he trusted her, and presumably that would include reliability on her part, not just trustworthiness. So he trusted her so much he appointed her as his power of attorney for health matters. This is the incompetent, demented Ms. Gagnon we would have, the court would have us believe. So is there a due process violation in the court not throwing taxpayer money down a hole on a testimony that is inadmissible under Daubert, improper under Rule 16 and Rule 12 due to the lack of notice and discovery? I think the answer is clear. The answer is no. And so in any event, as to both the trial issues, the jury instruction issue and the due process issue, the evidence in this case was crushing. So any error, and there was none, but any error that might be found didn't affect the outcome of these proceedings. It was a clear, straight rip. She got the money and the bank records showed it immediately being spent by her over the course of 64 days. She just converted it for her own use because she was in desperate need of the money. She knew darn well as to what she was doing, and she obtained the money by fraud and then began to spend it out the back door. So for all those reasons, we think the due process violation is wrong. As to the jury instruction, I'll just rely on this court's prior decisions in Treadwell, Shipsey, and Ginian. Those are all cited in our brief. They've all approved the definition of intent to defraud that is challenged on this appeal, every one of those cases. So is that a clear error? I would think not. In addition to the fact that the model instruction, which is approved by a committee of judges and lawyers, is my understanding, included the intent. We relied on the model instruction. So there was one other issue raised during the argument a moment ago, and that's the court asked whether, I believe it was Judge Trott, asked a question about an argument that counsel made about suggesting that, well, maybe she didn't have the money, she didn't intend to, she got the money initially without having the fraudulent intent. That wasn't the defense at trial number one. It wouldn't be a viable defense for obvious reasons. But in U.S. v. Jones, this court said that even if she had obtained the money lawfully without fraudulent intent at the outset and then decided to embezzle it and convert it for her own use, that would still constitute wire fraud. Beyond that, I think if the court has any other questions about the sentencing issues, I'd be happy to address them. What was the defense? The defense argued that she was, in the opening statement, she's honest. She's an honest person who wouldn't do this kind of thing. The defense was going to call two Catholic priests to testify as to her good character and trustworthiness, which they did. It was essentially just a bad business, an accident. Where did the defense assert that there was something wrong with her to the point that she couldn't form the requisite intent for the crime? That was never argued in the opening statement, and it wasn't really developed as any part of the cross-examination. Did anybody testify that she was messed up in the head to use the street language to the point that she couldn't become a crook even if she wanted to? The answer is no. But even the better answer is witnesses testified that she had no such problem. We asked. That's the way I read the record. We asked. Mr. Sweeney, for example, he was one of the bank representatives, was asked whether or not he observed any irregularities with Ms. Gagnon when he was working on the real estate transaction in this case. He said no. Joseph Broderick, one of the individuals she attempted to get the extra cash from after she'd blown through all the $285,000, he testified to the contrary, that Ms. Gagnon was very competent, one of the best he'd seen and ever worked with. She was good at closing deals, quote, very competent, unquote, very efficient, unquote, more capable than most. So in any event, I don't have any further arguments unless the Court has something about it. No further questions. Thank you, counsel. Mr. Burns, you have some reserve time. Thank you. Defense counsel didn't indicate he made a strategic trial choice. He repeatedly said why he wasn't calling the expert, which was because Ms. Gagnon couldn't pay the expert. There wasn't late notice. There was notice and discovery provided a year before trial. Government counsel repeatedly said that they didn't want to go to the trouble of filing an opposition until they were sure, until they were guaranteed. Counsel, do you take any issue with what the trial counsel just said what the defense was? It seems to me that if you put on the defense that there was something wrong in her head, that would have been completely inconsistent with the defense that was used, that she was a competent, honest, responsible person. The testimony about her being competent wasn't presented by the defense. That was elicited by government counsel. What was her defense then? Her defense was that she didn't have the intent to scam these nuns, that basically she had taken the money and she had squandered it irresponsibly, but that she didn't intend to scam them. So that doesn't have anything to do with head problems, does it? Well, I'd have to read defense counsel's mind, but my belief, my presumption, is that he didn't present that defense because he didn't have the goods, the goods being Dr. Sporty's testimony. So without being able to put in that key testimony, he didn't proceed with that. But he was very clear that he wanted to call Dr. Sporty. This wasn't a strategic choice. And as far as Dr. Sporty and Dr. Franklin's opinions, you know, government counsel makes it seem as if those reports say nothing of value. If you look at the reports, it's some 22 pages of it. They say quite a good deal of value. And these gentlemen. Well, there you go. You're back on ineffective assistance of counsel because what she did, what was in the report was what I read early, that she was claiming she had tons of money. Now, that may have been BS, but that was what was in front of the judge. Don't worry about money. I got plenty, even enough to make restitution. She originally told Dr. Sporty that she'd be able to pay him. Then she couldn't because she didn't have the money. But what was in front of the judge was her claim that she had plenty of money. Well, again, my point is not that the judge should have said, OK, here's whatever money you need for Dr. Sporty. My point is that it had been driven so home to the judge that defense counsel was not calling this witness, who seemed pretty important, because she couldn't pay. And at that point, I believe, based on this court's case, on the Supreme Court's case law, that the judge had a duty to intervene. And if he had intervened, some of these problems, you know, was there sufficient backup discovery? All that could have been ironed out. There's a duty of inquiry. Allen and Glasser say that. Once that inquiry is made, these problems could be ironed out. And, again, this was compelling stuff. This was not a bunch of junk, contrary to how it's been portrayed here. If you look at the reports, you can see that for yourself. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision. And we will hear argument in Wayne Golston v. Time Warner.
judges: O'scannlain, Trott, Bybee